DEPARTMENT OF HEALTH AND MENTAL HYGIENE
ET AL. *v.* LIONS MANOR NURSING HOME

[No. 16, September Term, 1977.]

*Decided November 7, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Louise T. Keelty, Assistant Attorney General,* with whom

was *Francis B. Burch, Attorney General,* on the brief, for appellants.

*Thomas N. Biddison, Jr.,* with whom were *Gallagher, Evelius & Jones* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

Maryland Code (1957, 1971 Repl. Vol., 1976 Cum. Supp.), Art. 43, § 42, requires the Department of Health and Mental Hygiene to administer a program, known as the Medical Assistance program, to provide comprehensive medical care for the indigent. To implement one of the aspects of this program, the statute specifically authorizes the Department to contract with nursing homes for the provision of skilled nursing services for Medical Assistance recipients.

Under this program, nursing homes are reimbursed for the services and supplies they provide to patients in one of three ways. (1) A per diem rate or "vendor payment" is paid by the Department to the nursing home as payment in full for certain, specified items. As of June 1975, these items included services and supplies such as bandages, wheel chairs, special diets and therapy. The nursing home may not supplement this per diem payment by additional charges to the patient, or any other person, for any of the covered items. (2) A specified group of additional services are not included in the per diem rate but they are covered under the program, and the Department will reimburse the nursing home for these services in addition to the per diem rate. (3) The nursing home may directly charge the patient for items not covered in either of the first two categories. This third category primarily concerns items for personal use and comfort, such as tobacco, private telephone and cosmetics. Prior to July 1975, this third category included personal laundry.

In June 1975, a directive entitled "Nursing Home Policy No. 10" was sent to all nursing home facilities which were then under contract with the Department. This directive announced that, as of July 1, 1975, the services covered by

the per diem "vendor payment" would include, among other things, personal laundry. The Lions Manor Nursing Home was one of the facilities then under contract with the Department, receiving $20.70 per day per patient. Prior to the effective date of the directive, Lions Manor had been charging Medical Assistance patients $2.00 per week for personal laundry services. The directive purported to prohibit Lions Manor from continuing to charge its $2.00 per week fee for personal laundry. Coincident with this increase in services covered by the per diem rate, the per diem rate paid to Lions Manor was increased by $3.20 per day per patient, or $22.40 per week.

On November 1, 1975, the Department entered into a new contract with Lions Manor, to provide nursing services under the Medical Assistance program. In pertinent part, this contract obligated Lions Manor:

> "To accept for payment for supplying . . . [nursing services], the Department's vendor payment now in effect, or as hereafter modified.
>
> "1. The vendor payment will be accepted as payment in full for the care of the patient; and
>
> "2. No additional charge will be made to the patient, any member of his family, or to any other source. . . ."

The Department, on the other hand, agreed, in pertinent part:

> "A. To pay for such skilled nursing services in the form of vendor payments (in amounts and under conditions determined by the Department) for all . . . [Medical Assistance patients] receiving skilled nursing care . . . .

> \* \* \*

> "E. To give to the Skilled Nursing Home reasonable notice of any impending change in its status or change in payment formula as a participating Skilled Nursing Home."

In January 1976, Lions Manor brought an action against the Department in the Circuit Court for Allegany County for a declaratory judgment. Lions Manor maintained that the July 1 directive issued by the Department is a rule within the contemplation of the Administrative Procedure Act, that it was not adopted in accordance with the statutory rule-making procedures of the Act, and that therefore it is void and could not prohibit Lions Manor from continuing, for the 1975-1976 fiscal year, to charge its Medical Assistance patients for personal laundry. Lions Manor asked for a declaration that it could continue its charges for personal laundry. The Department, on the other hand, contended that its directive was binding on Lions Manor on either of two grounds: (1) as a determination authorized by regulation, or (2) pursuant to the terms of the contracts between the Department and Lions Manor. Both sides filed motions for summary judgment. The Department attached to its motion the contract between the parties covering the period beginning November 1, 1975. However, neither party attached the contract covering that portion of the 1975-1976 fiscal year prior to November 1, 1975, and thus the earlier contract is not in the record. The circuit court granted Lions Manor's motion for summary judgment, and the Department took an appeal to the Court of Special Appeals. Before any proceedings in that court, we issued a writ of certiorari.

The Department makes alternative arguments on appeal. Initially, the Department relies on one of its adopted regulations, COMAR 10.09.10.09B(5), which states, in effect, that whether a particular service is to be covered by the per diem rate will be "determined by the Department." [1] The Department maintains that the July 1 directive was a "determination" made pursuant to a regulation and is not itself a regulation. The Department appears to argue that, while the directive has the force and effect of law and is binding as a standard on Lions Manor, it is not a rule within

---

1. In fact, the effective date of this regulation was July 9, 1975, eight days after the effective date of the directive. However, in light of our disposition of this case, it is not necessary to decide what effect, if any, this has on the status of the directive.

the contemplation of the Administrative Procedure Act, Code (1957, 1971 Repl. Vol.), Art. 41, § 244 *et seq.*, and thus was not required to be promulgated in accordance with the Act's mandated rule-making procedures. Alternately, the Department argues that the directive is binding on Lions Manor pursuant to the contracts with the Department.

We do not believe that the status of the directive issued by the Department with respect to the Administrative Procedure Act's definition of "rule" and the Act's mandated rule-making procedures is an issue relevant to the disposition of this case. Both parties agree that the services provided by Lions Manor and the reimbursement it was to receive for these services were subjects of the contracts entered into by the parties. The terms of these contracts, entered into pursuant to the mandate of Art. 43, § 42, determine the rights and obligations of the parties. We know of no authority, nor has any been suggested, which would support the Department's contention that it could, by a mere directive issued pursuant to a regulation, unilaterally alter the obligations which have been created by these contracts entered into pursuant to a statute. Whatever force and effect the Department's directive might have, in the absence of such contracts, is not an issue presented for decision in this case.

However, with respect to the portion of fiscal year 1975-1976 commencing November 1, 1975, we agree with the Department's alternative argument that the July 1 directive is binding on Lions Manor pursuant to its contract with the Department. On November 1, 1975, Lions Manor and the Department entered into an agreement which incorporated by reference the vendor payment schedule as modified by the directive of July 1, 1975. Lions Manor agreed to "accept for payment for supplying ... [nursing services], the Department's vendor payment now in effect or as hereafter modified." Therefore, according to the terms of the contract, Lions Manor agreed to provide, among other things, personal laundry services to Medical Assistance patients and agreed to accept the stipulated per diem fee in return for these services. Lions Manor was not obligated to agree to these terms and continue its contractual participation in the

Medical Assistance program. However, it chose to obligate itself to the then current vendor payment schedule. Lions Manor contends that the directive falls within the definition of "rule" in the Administrative Procedure Act, and that it is invalid as a rule because statutorily mandated procedures were not followed. This argument, however, is irrelevant. Even if the directive is not effective as a *rule*, the substance of the directive can still be effective as part of an *agreement* between the parties.

As we have earlier indicated, however, the record in this case is incomplete. The record shows that, for the period between July 1, 1975, and October 31, 1975, a contract did exist between Lions Manor and the Department regarding the provision of nursing services, but neither party made the actual contract part of the record. There is suggestion in the record that the terms of this contract were substantially similar to the contract entered into on November 1, 1975. If in fact, in this earlier contract, Lions Manor had authorized the Department to modify the vendor payment schedule, as it had so authorized the Department in the November 1975 contract, then the July 1 directive might be effective pursuant to the contract's provisions. If, however, this earlier contract did not provide for modification, or if the earlier contract reflected an intent of the parties that modification must follow certain procedures not satisfied by the Department's issuance of a directive, then the directive could not alter the terms of the pre-existing contract.

Thus, with respect to the period from July 1, 1975, to October 1, 1975, Lions Manor did not establish that it could continue to charge for personal laundry. The Department, on the other hand, did not establish the contrary. Consequently, it was error to grant the motion for summary judgment, and the case should have proceeded to trial.

*Judgment of the Circuit Court for Allegany County reversed and case remanded for further proceedings not inconsistent with this opinion.*

*Appellee to pay costs.*