(Nos. 59286, 59287 cons

SENN PARK NURSING CENTER *et al.*, Appellees, v. JEFFREY C. MILLER, Director of Public Aid, Appellant.

*Opinion filed October 19, 1984.—Rehearing denied November 30, 1984.*

172

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and James C. O'Connell, Barbara L. Greenspan, Karen Konieczny, Paul P. Biebel, Jr., and Patricia Rosen, Assistant Attorneys General, of Chicago, of counsel), for appellant.

Richard F. Zehnle, of Vedder, Price, Kaufman & Kammholz, of Chicago, for appellees.

J. Brian Heller and Maria E. Richter, of Springfield, for *amicus curiae* the Joint Committee on Administrative Rules.

JUSTICE CLARK delivered the opinion of the court:

This appeal involves two consolidated cases. In the first case, which has been called *"Senn Park I,"* the plaintiffs, three Illinois nursing-home facilities, sought a writ of *mandamus* in the circuit court of Cook County against the defendant, Jeffrey C. Miller, Director of the Illinois Department of Public Aid (the IDPA). The plaintiffs asked the circuit court to direct Miller to reimburse them for Medicaid services in accordance with the inflation-update procedure set forth in the Illinois State Medicaid plan which was in effect prior to January 1, 1980, rather than the procedure Miller adopted, which became effective January 1, 1980. The circuit court found that the new procedure was invalid and ordered the defendant to reimburse plaintiffs for their operating costs for services rendered after February 15, 1980 (the date the plaintiffs demanded repayment under the old procedure), using the prior method of computation. Both defendant and plaintiffs appealed to the appellate court. The plain-

tiffs contested only that portion of the order that required reimbursement for services rendered after February 15, 1980. The appellate court affirmed in part, modified in part, and remanded the cause. (118 Ill. App. 3d 504.) The appellate court held that the amended procedure for calculating the inflation-update factor was a "rule" within the meaning of the Illinois Administrative Procedure Act and that since it was not published in accordance with the Act, or the Federal notice and comment regulations, it was invalid. The appellate court also agreed with plaintiffs that they were entitled to relief beginning with services rendered on January 1, 1980, not beginning with services rendered after February 15, 1980.

In *"Senn Park II,"* the second case involved in this appeal, the plaintiffs filed a complaint for declaratory judgment in the circuit court of Cook County, asking the court to declare that Emergency Rule 4.14221, which was enacted by Miller after the judgment in *Senn Park I*, was void and of no effect because there was no emergency as that term is defined in the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1979, ch. 127, par. 1005.02) and because the rule was promulgated in violation of Federal notice requirements (42 C.F.R. sec. 447.205 (1979)). On December 30, 1980, the emergency rule in question was withdrawn. The parties filed cross-motions for summary judgment. The trial court, in its order granting defendant's motion for summary judgment, found that the emergency rule was valid, that the action was not moot because the rule was withdrawn, and that the plaintiffs had to bring their monetary claims in the Illinois Court of Claims. On appeal in the appellate court, the plaintiffs contended that the trial court erred in finding that the emergency rule was valid and that their monetary claims had to be brought in the Court of Claims. Defendant asserted that the matter was

moot. The appellate court affirmed in part, reversed in part, and remanded the cause to the circuit court (118 Ill. App. 3d 733). The appellate court held that the matter was not moot because, even though the emergency rule was withdrawn, the validity of the rule had to be decided in order to determine the amount of reimbursement the plaintiffs would be entitled to under the writ of *mandamus* to be issued in *Senn Park I*. The appellate court further held that the circuit court had erred in finding the emergency rule valid, because there was no emergency and because the defendant had failed to comply with the notice and comment requirements of the Federal regulations. Lastly, the appellate court held that the circuit court had erred in ordering that the plaintiffs' monetary claims must be brought in the Court of Claims.

The defendant filed a petition for leave to appeal in both of these cases, and they have been consolidated on appeal in this court.

Nursing-home care for needy residents of the State of Illinois is provided through Medicaid. The Medicaid program is a cooperative State and Federal program in which the State is partially reimbursed by the Federal government. The program is authorized under the Social Security Act (42 U.S.C. sec. 1396 *et seq.*) and implemented in accordance with Federal regulations. Each State, in order to participate in the program, must have a State plan which is subject to the approval of the Department of Health and Human Services (HHS). The IDPA must set reasonable rates of reimbursement for the participating nursing-home facilities, taking into account inflationary trends. The IDPA requires nursing-home facilities to submit annual cost reports which set forth the expenses of the facility for the fiscal year preceding the calendar rate year. The IDPA determines the reimbursable costs from these reports. Prior to January 1, 1980, the IDPA had calculated the inflation-update

factor by comparing the two most recent cost reports of all the nursing homes with the Consumer Price Index over the same period, and multiplying that factor by the projected price changes for the upcoming year.

On December 14, 1979, the IDPA sent the plaintiffs and the other participating nursing-home facilities copies of changes to the Medicaid plan which included an amended procedure for calculating the inflation-update factor whereby all available cost reports were compared. The IDPA published notice of the amended inflation-update procedure in the newspaper of widest circulation in each Illinois city with a population of 50,000 or more, from December 17, 1979, through December 24, 1979. The notice was not published in the Illinois Register, because it was refused by that publication. The record does not indicate why the Illinois Register refused the notice. The notice also did not provide an address where comments could be sent. On May 14, 1980, HHS approved the amended procedure, making it retroactive to January 1, 1980.

On February 14, 1980, plaintiffs received their first payments, which were computed according to the new inflation-update procedure. On February 15, 1980, plaintiffs demanded that the IDPA pay them in accordance with the previous procedure. Plaintiffs filed their complaint for a writ of *mandamus* in response to the IDPA's refusal to reimburse the nursing homes using the previous update procedure.

On appeal before this court in *Senn Park I*, defendant raises the same issues he raised in *Senn Park I* in the appellate court.

The first issue we will address is whether the amendment to the State's Medicaid plan is a rule within the meaning of the Illinois Administrative Procedure Act (Ill. Rev. Stat. 1979, ch. 127, par. 1001 *et seq.*). We agree with the circuit and appellate courts that the amendment

which changed the inflation-update procedure is a rule.

Under the Act, a rule is defined as follows:

> " 'Rule' means each agency statement of general applicability that implements, applies, interprets, or prescribes law or policy, but does not include (a) statements concerning only the internal management of an agency and not affecting private rights or procedures available to persons or entities outside the agency, (b) informal advisory rulings issued pursuant to Section 9, (c) intra-agency memoranda or (d) the prescription of standardized forms." Ill. Rev. Stat. 1979, ch. 127, par. 1003.09.

There is no doubt that the amended inflation-update procedure is an agency statement of general applicability. It does implement a policy of the agency and is not a statement dealing only with the internal management of the agency. The rule does affect the rights and procedures available to people and entities outside the agency.

The defendant asserts that the relationship between the State and the Federal government in creating a workable Medicaid plan somehow causes the amendment in this case to be something other than a rule. In his brief the defendant states:

> "Thus, the Appellate Court's decision that a State Plan amendment is a rule is contrary to the structure of the Medicaid program and should be reversed. A state participating in the Medicaid program must at all times have in place a state plan. IDPA amended the state plan to update the inflation update in accordance with federal law. IDPA is required to provide payment for services only to the extent that FFP [Federal Financial Participation] is available, and it is clear that FFP is available only for those expenditures made in accordance with an approved state plan."

We agree with the appellate court that the State *plan* is not what is at issue, but rather a rule changing the State plan. The defendant has not shown in what way he changed the plan to comply with Federal law. He

changed the procedure before receiving any kind of approval or directive from HHS. The defendant's argument is circular and incorrectly analogizes the overall State plan with the rule which changed the plan without proper notice and opportunity for comment. Just because HHS approves the overall State plan, and reimbursement procedures are part of the State plan, does not mean that the IDPA does not have to follow the proper procedures under the Illinois Administrative Procedure Act for adopting a rule. We agree with the appellate court that none of the exclusions contained within the definitional section of a "rule" applies to this alleged amendment.

It is clear from section 5.01 of the Illinois Administrative Procedure Act that the Act is intended to give interested persons the opportunity to submit their views and comments on intended rule changes, in that section 5.01 specifies that the "agency shall consider all submissions received." (Ill. Rev. Stat. 1979, ch. 127, par. 1005.01.) While there are certain statutory exceptions to the notice and comment requirements for the adoption of rules, we believe those exceptions are of a limited nature and should be appropriately applied.

Section 5(c) of the Illinois Administrative Procedure Act provides:

> "(c) The notice and publication requirements of this Section do not apply to a matter relating solely to agency management, personnel practices, or to public property, loans or contracts." Ill. Rev. Stat. 1979, ch. 127, par. 1005(c).

The appellate court analyzed the contracts exception and correctly stated:

> "We are persuaded that under the IAPA [Illinois Administrative Procedure Act], as under the Federal APA, a matter comes under the contracts exception only when contracts are *clearly* and *directly* involved. (See *Humana of*

*South Carolina, Inc. v. Califano* (D.C. Cir. 1978), 590 F.2d 1070, 1082.) We believe that with regard to the reimbursement of nursing homes, contracts, whether State-Federal or agency-providers, are not clearly and directly involved, but rather, are only incidental means to the end of providing nursing home care for needy individuals. [Citation.] Accordingly, we conclude that the amended inflation update procedure is not a matter relating to contracts within the meaning of the [Illinois Administrative Procedure Act]." 118 Ill. App. 3d 504, 511.

We believe the more convincing reasons for holding that the amended inflation-update procedure is within the purview of the Illinois Administrative Procedure Act were stated in the appellate court opinion, wherein it held:

"Here, plaintiff agreed to receive payment pursuant to the reimbursement rates then in effect, as adopted or amended by IDPA. However, the agreement also provided that acceptance of the rates was not a waiver of the right to pursue legal or administrative remedies or negotiations for rate adjustments or increases. We believe that plaintiffs' agreement to accept payment pursuant to amended rates presupposes that any amendments would be properly promulgated under the [Illinois Administrative Procedure Act], particularly because (1) the agreement contained the 'no waiver' language, (2) the Illinois Public Aid Code incorporates the provisions of the [Illinois Administrative Procedure Act] (Ill. Rev. Stat. 1979, ch. 23, par. 12—13) and (3) the Illinois Public Aid Code specifically requires that IDPA 'provide, during the process of establishing the payment rate for skilled nursing and intermediate care services, or when a substantial change in rates is proposed, an opportunity for public review and comment on the proposed rates prior to their becoming effective.' (Ill. Rev. Stat. 1979, ch. 23, par. 5—5.7.)" 118 Ill. App. 3d 504, 512.

We also agree with the appellate court that defendant's contention that the amended update procedure is within the agency-management exception is without

merit. In this case, the new procedure did not relate solely to agency management but affected private rights and procedures available to persons and entities outside the agency. The change in the procedure obviously affected the percentage of reimbursement to plaintiffs and to other nursing homes.

The next issue we will address is defendant's assertion that, since plaintiffs had actual notice of the change in the procedure, they cannot challenge the IDPA's failure to comply with the publication requirements of the Illinois Administrative Procedure Act. The appellate court disagreed with defendant's assertion, and we also disagree. To hold that actual knowledge is sufficient to preclude a party's challenge to an agency's failure to comply with the rulemaking requirements of the Illinois Administrative Procedure Act would make the notice and comment requirement illusory.

Since we believe that the amended procedure was a rule within the meaning of the Illinois Administrative Procedure Act and since the agency did not, and does not contend it did, follow the proper procedure for adoption of a rule, the rule is invalid.

We also believe the circuit and appellate courts were correct in their finding that defendant did not comply with Federal regulations in changing the inflation-update procedure. At the time the defendant attempted to change the update procedure, the Federal notice requirement provided:

"[T]he agency must provide public notice of any proposed change in the statewide method or level of reimbursement for a service, if the change is expected to increase or decrease Medicaid payments for that service by 1 percent or more during the 12 months following the effective date of the change." 42 C.F.R. sec. 447.205 (1979).

There was also a provision which required that notice be given "at least 60 days before the proposed effective

date of the change" (42 C.F.R. sec. 447.205(d)(1)), and that the notice "give an address where written comments may be sent and reviewed by the public." (42 C.F.R. sec. 447.205(c)(5)).

As the appellate court correctly noted, the defendant did not comply with those requirements or the requirements as they were later amended. The amended requirements also specified that the notice had to "give an address where written comments may be sent and reviewed by the public." (42 C.F.R. sec. 447.205(c)(5) (1982).) So, regardless of which requirements are applied, the circuit and appellate courts properly concluded that the amended inflation-update procedure which would decrease Medicaid payments to the plaintiffs by 1% or more during the 12 months following the effective date of the change was not changed in compliance with Federal notice and comment requirements.

Plaintiffs contend that since the amended inflation-update procedure was never valid, they should be reimbursed using the old procedure from January 1, 1980, not beginning with services rendered on February 15, 1980, the day plaintiffs demanded payment on the basis of the old procedure. We agree. The rule was invalid from January 1, 1980, until February 15, 1980, so that payment for that time period should not be made in accordance with the invalid rule.

Defendant's argument that a writ of *mandamus* should not have issued in this case is erroneous. In *People ex rel. Callahan v. Whealan* (1934), 356 Ill. 328, 334, this court stated:

> "It has long been the rule in this State that a relator in *mandamus* must show a clear and undoubted right to the relief prayed and a corresponding duty on the part of the respondent to do the act sought to be compelled."

We believe plaintiffs have established a clear and undoubted right to be reimbursed under the old inflation-

update procedure, since the new procedure was improperly instituted and is invalid. The defendant therefore has a corresponding duty to reimburse the plaintiffs according to the old procedure, which had been approved by the Department of Health and Human Services and was properly adopted.

Therefore, as to *Senn Park I* we affirm the appellate court.

*Senn Park II*, as was stated earlier in this opinion, involves Emergency Rule 4.14221, which the defendant promulgated allegedly in response to the circuit court's decision and order entered in *Senn Park I*.

On appeal before this court in *Senn Park II*, the defendant raises three issues: first, whether the appellate court erred in finding that the defendant had no proper basis for promulgating an emergency rule in response to the adverse decision of the circuit court in *Senn Park I*; second, whether the appellate court erred in concluding that the defendant had violated Federal notice and comment requirements; and, lastly, whether the appellate court erred in reversing the trial court's finding that plaintiffs' monetary claims had to be brought in the Court of Claims.

We will first address the issue of whether Emergency Rule 4.14221, which was later withdrawn, was valid. Section 5.02 of the Illinois Administrative Procedure Act sets forth the instances when emergency rulemaking is proper and governs the manner in which these rules should be promulgated. (Ill. Rev. Stat. 1979, ch. 127, par. 1005.02.) Section 5.02 provides:

"Emergency rulemaking. 'Emergency' means the existence of any situation which any agency finds reasonably constitutes a threat to the public interest, safety or welfare. Where any agency finds that an emergency exists which requires adoption of a rule upon fewer days than is required by Section 5.01, and states in writing its

reasons for that finding, the agency may adopt an emergency rule without prior notice or hearing, upon filing a notice of emergency rulemaking with the Secretary of State pursuant to Section 6.01 of this Act. Such notice shall include the text of the emergency rule and shall be published in the Illinois Register. Subject to applicable constitutional or statutory provisions, an emergency rule becomes effective immediately upon filing pursuant to Section 6, or at a stated date less than 10 days thereafter. The agency's finding and a statement of the specific reasons therefor shall be filed with the rule. The agency shall take reasonable and appropriate measures to make emergency rules known to the persons who may be affected by them."

The defendant gave two reasons why he believed an emergency situation existed. First, he contended that the court's decision in *Senn Park I* created a risk of loss of Federal matching funds. The second reason, which is related to the first, was that the emergency rule was necessary to "assure that inflation update factors are not overstated due to short term fluctuations and prevent the system from providing a disincentive to cost containment."

We do not believe that the court's decision in *Senn Park I* created a risk of loss of Federal matching funds and that this alleged risk of loss reasonably constituted a threat to the public interest, safety or welfare. As the appellate court stated in its opinion:

"The rule changing the inflation update procedure declared invalid in *Senn Park I* was originally proposed by defendant on December 14, 1979. Approval of this change by HHS did not occur, however, until May 14, 1980.Yet, defendant made payments in accordance with the new procedure prior to receiving the requisite approval. Apparently, defendant was not concerned at that time that payments which were not in accordance with the approved State plan would result in the loss of Federal matching funds. In addition, it appears that while the

procedure for updating the inflation rate set forth in the December 14, 1979, notice of rulemaking is the same as the procedure set forth in the July 16, 1980, notice of emergency rulemaking, that procedure is not identical in all respects to the method approved by HHS on May 4, 1980. Defendant, however, has not expressed concern that Federal matching funds will be cut off due to this disparity. Furthermore, as plaintiffs point out, the change in the inflation procedure was not initiated by any action taken by HHS. Under these circumstances, we believe that defendant's finding of an emergency due to the risk of loss of Federal matching funds is based on mere speculation. It is unreasonable to assume that Federal monies would be withheld if defendant failed to make payments pursuant to a rule which had been declared invalid by a State court." 118 Ill. App. 3d 733, 740-41.

We agree with the appellate court that the defendant's belief that there was a risk of loss of Federal matching funds, besides the situation being self-created, was not a reasonable fear under the circumstances.

The appellate court further pointed out that HHS could only withhold matching funds after notice and an opportunity for a hearing. Defendant never alleged that the inflation-update procedure which existed prior to his change was ever disapproved of by HHS, and since HHS had approved of the original procedure it would be highly unlikely that HHS would find that the old procedure did not comply with Federal regulations. We therefore conclude that the defendant's assertion that there existed a risk of loss of Federal matching funds did not reasonably constitute a threat to the public interest, safety or welfare.

Defendant's second reason, that the emergency rule was necessary to assure that inflation-update factors were not overstated due to short-term fluctuations, also does not comport with the definition of an emergency as that term is defined in section 5.02. We agree with the

appellate court that nothing in the record indicates that HHS had ever expressed its disapproval of the old inflation-update procedure because it was allegedly overstated due to short-term fluctuations. And we believe, as the appellate court did, that although it is important to assure that inflation factors are not overstated and that disincentives to cost containment are not created, these two reasons do not reasonably constitute a threat to the public interest, safety or welfare.

If in fact an emergency situation did exist, then the defendant would not have had to comply with the Federal notice and comment procedures. Since we have determined that no emergency existed and since the defendant does not deny that he failed to comply with the notice and comment procedures, we affirm the holding of the appellate court that the defendant failed to comply with the Federal notice and comment procedures.

The last issue raised is whether the appellate court erred in reversing the trial court's finding that plaintiffs' monetary claims must be brought in the Court of Claims. We now affirm the appellate court and hold that the circuit court was incorrect in finding that plaintiffs' monetary claims must be brought in the Court of Claims.

As the appellate court noted, the determination of whether a suit is brought against the State and thus barred by the doctrine of sovereign immunity does not depend on the identity of the formal parties, but rather on the issues raised and the relief sought. 118 Ill. App. 3d 733, 746, citing *Moline Tool Co. v. Department of Revenue* (1951), 410 Ill. 35, 37; *Betts v. Department of Revenue* (1979), 78 Ill. App. 3d 102, 107.

Section 4 of article XIII of the 1970 Constitution abolished sovereign immunity by providing: "Except as the General Assembly may provide by law, sovereign immunity in this State is abolished." (Ill. Const. 1970, art.

XIII, sec. 4.) However, Public Act 77—1776 (Ill. Rev. Stat. 1979, ch. 127, par. 801), which was enacted by the legislature and became effective the same date as section 4, provides that the State may not be made a defendant or a party in any court except as set forth in the Court of Claims Act (Ill. Rev. Stat. 1979, ch. 37, par. 439.1 *et seq.*).

Under the Court of Claims Act "[t]he court shall have exclusive jurisdiction to hear and determine the following matters:

"(a) All claims against the state founded upon any law of the State of Illinois, or upon any regulation thereunder by an executive or administrative officer or agency ***.

(b) All claims against the state founded upon any contract entered into with the State of Illinois" Ill. Rev. Stat. 1981, ch. 37, pars. 439.8(a), (b).

In *Boards of Education v. Cronin* (1977), 54 Ill. App. 3d 584, the court stated:

"[W]here suit is brought against a State official and the judgment or decree although nominally against the official could operate to control the action of the State or subject it to liability, the cause in effect is a suit against the State. (*Schwing v. Miles* (1937), 367 Ill. 436, 11 N.E.2d 994; *Struve v. Department of Conservation* (1973), 14 Ill. App. 3d 1092, 303 N.E.2d 32.) Such claims against the State brought in the circuit court are barred by operation of 'An Act in relation to immunity for the State of Illinois' (Ill. Rev. Stat. 1975, ch. 127, par. 801)." 54 Ill. App. 3d 584, 586.

In *Sass v. Kramer* (1978), 72 Ill. 2d 485, 491-92, this court stated:

"The constitutional inhibition against making the State of Illinois a party to a suit cannot be evaded by making an action nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested. ***

* * *

> While legal official acts of State officers are in effect acts of the State itself, illegal acts performed by the officers are not, and when a State officer performs illegally or purports to act under an unconstitutional act or under authority which he does not have, a suit may be maintained against the officer and is not an action against the State of Illinois. (*E.H. Swenson & Son v. Lorenz; Moline Tool Co. v. Department of Revenue*; G. Braden & R. Cohn, The Illinois Constitution: An Annotated and Comparative Analysis 233 (1969).)"

In the instant case, suit was filed against Jeffrey C. Miller, the Director of Public Aid. Although Miller was not acting under an unconstitutional statute, he did act in excess of his authority by changing the inflation-update procedure without complying with statutory prerequisites. We believe that in this case, where the defendant officer acted in excess of his statutory authority, the rights of the plaintiffs to be free from the consequences of his action outweigh the interest of the State which is served by the sovereign immunity doctrine. The purpose of the doctrine of sovereign immunity is that it "protects the State from interference in its performance of the functions of government and preserves its control over State coffers." (*S. J. Groves & Sons Co. v. State* (1982), 93 Ill. 2d 397, 401.) In this case, the State cannot justifiably claim interference with its functions when the act complained of by plaintiffs is unauthorized by statute.

In *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, the plaintiff was challenging the defendant's authority to suspend it from participating in the Medicaid program. In *Bio-Medical Laboratories, Inc.*, this court stated:

> "A challenge is also made on the grounds that plaintiff's action is barred by the doctrine of sovereign immunity. It is argued that, in essence, this action is one against the State, seeking to have it continue to do business with plaintiff. Plaintiff is not attempting to enforce a present

claim against the State, but, rather, seeks to enjoin the defendant from taking actions in excess of his delegated authority and in violation of plaintiff's protectable legal interests. Such a suit does not contravene the immunity prohibition. (E.g. *County of Cook v. Ogilvie* (1972), 50 Ill. 2d 379, 383; *Owens v. Green* (1948), 400 Ill. 380, 408-09; *People ex rel. Freeman v. Department of Public Welfare* (1938), 368 Ill. 505, 506-07.)" 68 Ill. 2d 540, 548.

In *Bio-Medical Laboratories*, this court went on to hold that in that case injunctive relief was the appropriate remedy because the threatened suspension had not yet taken place, and "[a]ny subsequent action against the State by the plaintiff for damages resulting from an unlawful suspension would certainly raise issues of governmental immunity." 68 Ill. 2d 540, 549.

We believe that in the instant case, where the plaintiffs sought a writ of *mandamus* against Miller personally to direct him to pay them in accordance with the prior approved State plan, which was his duty, the action was properly brought in the circuit court. We agree with the appellate court and its reasoning when it stated:

"In this regard, an action to compel a public official to perform a clear and mandatory duty is not a suit against the State. (*John M. Bransfield Co. v. Kingery* (1936), 283 Ill. App. 405, 412-13; see *People v. Stevenson* (1916), 272 Ill. 215, 220-21, 111 N.E. 595, 597.) This is because ' "[t]he presumption obtains that the State, or a department thereof, will not, and does not, violate the constitution and laws of the State, but that such violation, if it occurs, is by a State officer or the head of a department of the State and such officer or head may be restrained by a proper action instituted by a citizen." ' *City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 124, 384 N.E.2d 310, 313, quoting *Schwing v. Miles* (1937), 367 Ill. 436, 441-42, 11 N.E.2d 944, 947." 118 Ill. App. 3d 733, 746.

For the reasons stated, we affirm the appellate court in *Senn Park I* and *Senn Park II*.

*Judgments affirmed.*