SENN PARK NURSING CENTER *et al.*, Plaintiffs-Appellants, *v.* JEFFREY C. MILLER, Director, Department of Public Aid, Defendant-Appellee.

First District (Third Division)   No. 81—2781

Opinion filed September 28, 1983.

734

Richard F. Zehnle, of Vedder, Price, Kaufman & Kammholz, of Chicago, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (William A. Wenzel, Special Assistant Attorney General, and Jennifer Rice, Senior Law Clerk, of counsel), for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiffs, Senn Park Nursing Center, Royal Gardens Nursing Center and Coventry Terrace Nursing Center, are the owners and operators of licensed skilled nursing facilities for the elderly and disabled. Defendant, Jeffrey C. Miller, is the director of the Illinois Department of Public Aid (IDPA), which is responsible for administering the Medicaid program in Illinois, including prospective reimbursement of facilities such as those owned and operated by plaintiffs. On July 25, 1980, IDPA published a notice of emergency rulemaking along with the text of the rule (Emergency Rule 4.14221), to be effective July 16, 1980. The purpose of the emergency rule was to change the method of updating allowable reported health care costs for inflation.

Defendant had previously attempted to change the method of calculating the inflation update factor by amending the State Medicaid plan, but on July 9, 1980, in a *mandamus* proceeding brought by these plaintiffs (*Senn Park I*),[1] the amendment was held to be invalid due to defendant's failure to comply with notice and comment requirements. After defendant caused the notice of emergency rulemaking to be published, plaintiffs filed a complaint for declaratory judgment in which they sought a declaration that emergency Rule 4.14221 was void and of no effect because there was no emergency as that term is defined by statute (Ill. Rev. Stat. 1979, ch. 127, par. 1005.02) and the rule was promulgated in violation of the applicable Federal notice requirements (42 C.F.R. sec. 447.205 (1979)).

On December 30, 1980, Emergency Rule 4.14221 was withdrawn. The parties subsequently filed cross-motions for summary judgment. In its order granting defendant's motion for summary judgment and denying plaintiffs' motion for summary judgment, the trial court found that (1) Emergency Rule 4.14221 was valid; (2) the action was not moot; and (3) plaintiffs' monetary claims must be brought in the Illinois Court of Claims. On appeal plaintiffs contend that the trial court erred in finding that emergency Rule 4.14221 was valid and that their monetary claims must be brought in the Illinois Court of Claims. Defendant contends that this matter is moot. We affirm in part, reverse in part and remand.

Initially, we address defendant's argument that this case is moot because (1) the emergency rule was withdrawn, (2) IDPA's appropriations for fiscal years 1980 and 1981 have lapsed and (3) this action will be mooted by a reversal in *Senn Park I*.

A case is moot when it does not involve any actual controversy. Where the issues involved in the trial court no longer exist, an appellate court will not review a case merely to decide moot or abstract questions, to establish a precedent, or to determine the right to, or the liability for, costs, or in effect, to render a judgment to guide potential future litigation. (*La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 378-79, 121 N.E.2d 486, 488.) According to defendant, there is currently no actual controversy between the parties because the emergency rule was withdrawn on December 30, 1980, and was replaced by a duly promulgated rule which incorporated the challenged inflation update procedure. Plaintiffs, however, argue that the withdrawal of the emergency rule did not *ipso facto*

---

[1] *Senn Park I* is being affirmed as modified in a separate opinion filed today. *Senn Park Nursing Center v. Miller* (1983), 118 Ill. App. 3d 504.

render the controversy moot since monetary relief is also in issue. Plaintiffs contend that a decision regarding the validity of the emergency rule is still necessary in order to determine the amount of reinstatement they will be entitled to under the writ of *mandamus* to be issued in *Senn Park I*. We agree with plaintiffs.

■ If Emergency Rule 4.14221 is found to be invalid, then plaintiffs will be entitled to seek monetary relief from the date the rule went into effect until the date that it was withdrawn. On the other hand, if the emergency rule is found to be valid, plaintiffs will not be entitled to any recovery for that period. Thus, it is clear that there is an actual controversy and that a determination of the validity of Emergency Rule 4.14221 will affect substantial rights of the parties. (See *Ashland Chemical Co. v. Pollution Control Board* (1978), 57 Ill. App. 3d 1052, 1056, 373 N.E.2d 826, 829; *Gribben v. Interstate Motor Freight System Co.* (1958), 18 Ill. App. 2d 96, 102-03, 151 N.E.2d 443, 447.) Therefore, the trial court correctly determined that this action should not be dismissed as moot for want of an actual controversy.

■ In addition, we reject defendant's contention that this action is moot because defendant's appropriations for fiscal years 1980 and 1981 have lapsed. In support of its position, defendant relies upon *West Side Organization Health Services Corp. v. Thompson* (1980), 79 Ill. 2d 503, 404 N.E.2d 208. In *West Side Organization*, plaintiffs sought to compel State officials to expend funds appropriated by the General Assembly for the use of the Dangerous Drugs Commission. Plaintiffs also sought relief which would have prevented the appropriation from lapsing, but the relief was denied. As a result, the appropriation lapsed according to statutory mandate (Ill. Rev. Stat. 1977, ch. 127, par. 161) while the appeal of the case was pending. The relevant portion of the lapse statute states:

> "All appropriations shall be available for expenditure for the fiscal year or for a lesser period if the Act making that appropriation so specifies. A deficiency or emergency appropriation shall be available for expenditure only through June 30 of the year when the Act making that appropriation is enacted unless that Act otherwise provides.
>
> Outstanding liabilities as of June 30, payable from appropriations which have otherwise expired, may be paid out of the expiring appropriations during the three-month period ending at the close of business on September 30." (Ill. Rev. Stat. 1977, ch. 127, par. 161.)

The supreme court ruled that the appellate court erred in refusing to dismiss the appeal as moot in view of the unavailability of funds nec-

essary for the granting of effectual relief to the parties involved. *West Side Organization Health Services Corp. v. Thompson* (1980), 79 Ill. 2d 503, 508, 404 N.E.2d 208, 211.

The situation here, however, is distinguishable from *West Side Organization.* The statute relating to the lapse of appropriations contains a third paragraph which was not at issue in *West Side Organization.* This paragraph states:

"However, medical payments may be made by the Department of Public Aid from its appropriations for that purpose for any fiscal year, without regard to the fact that the medical services being compensated for by such payment may have been rendered in a different fiscal year." (Ill. Rev. Stat. 1979, ch. 127, par. 161.)

Defendant does not argue that the reimbursement which plaintiffs seek is not for medical services. He does, however, contend that IDPA has discretion as to whether or not payments for medical services rendered in prior years should be made. This contention is untenable under the facts of this case. Even if we were to assume that the use of the word "may" in the statute generally means that medical payments for services rendered in prior years are discretionary with defendant, defendant cannot be permitted to escape his obligation to plaintiffs by simply exercising his discretion to the detriment of plaintiffs. As will be discussed later in this opinion, defendant was required to reimburse plaintiffs in accordance with the formula in effect prior to his attempts to amend the method of calculating the inflation update factor. Such payments, of course, are not discretionary. Accordingly, we reject defendant's argument that this case is moot because IDPA's appropriations have lapsed.

Defendant's additional contention that this case will be mooted by a reversal of the circuit court's decision in *Senn Park I* must be rejected in view of our affirmance of that decision as modified in a separate opinion being issued today. See *Senn Park Nursing Center v. Miller* (1983), 118 Ill. App. 3d 504.

We next address the issue of whether the trial court properly concluded that Emergency Rule 4.14221 was valid. Plaintiffs argue that there was no emergency which justified enactment of the emergency rule. Section 5.02 of the Illinois Administrative Procedure Act (IAPA) (Ill. Rev. Stat. 1979, ch. 127, par. 1005.02) defines an emergency and governs the manner in which emergency rules shall be promulgated. The statute provides:

"Sec. 5.02. Emergency rulemaking. 'Emergency' means the existence of any situation which any agency finds reasonably

constitutes a threat to the public interest, safety or welfare. Where any agency finds that an emergency exists which requires adoption of a rule upon fewer days than is required by Section 5.01, and states in writing its reasons for that finding, the agency may adopt an emergency rule without prior notice or hearing, upon filing a notice of emergency rulemaking with the Secretary of State pursuant to section 6.01 of this Act. Such notice shall include the text of the emergency rule and shall be published in the Illinois Register. Subject to applicable constitutional or statutory provisions, an emergency rule becomes effective immediately upon filing pursuant to Section 6, or at a stated date less than 10 days thereafter. The agency's finding and a statement of the specific reasons therefor shall be filed with the rule. The agency shall take reasonable and appropriate measures to make emergency rules known to the persons who may be affected by them."

Plaintiffs argue that defendant's reasons for finding an emergency as set forth in the notice of emergency rulemaking were insufficient to establish the existence of a situation which defendant reasonably could have found to constitute a threat to the public interest, safety or welfare. In the notice of emergency rulemaking, defendant stated that the existence of an emergency situation was demonstrated by the fact that the trial court's decision in *Senn Park I* could result in a requirement that defendant reimburse nursing homes and members of the Illinois Council for Long Term Care in a manner other than that approved in title XIX of the State plan which has been approved by the Department of Health and Human Services (HHS). Therefore, defendant stated, the emergency rule was necessary to "1) assure reimbursement of nursing homes according to the approved State Plan and prevent risk of a loss of federal matching funds; and 2) assure that inflation factors are not overstated due to short term fluctuations and prevent the system from providing a disincentive to cost containment." Another factor considered by defendant in support of his finding of an emergency was a letter he received from the Illinois council for Long Term Care demanding that defendant apply the order in *Senn Park I* to all nursing homes and long-term care facilities throughout the State.

■ We first address defendant's contention that the ruling in *Senn Park I* created a risk of loss of Federal matching funds. According to defendant, the ruling created this risk because it prevented defendant from complying with Illinois law, which requires that the reimbursement rates established by defendant be consistent with Fed-

eral criteria for approval of matching funds. (Ill Rev. Stat. 1979, ch. 23, par. 5—5.6.) Defendant points out that under 42 U.S.C. sec. 1396a(a)(13)(E)[2] and 45 C.F.R. sec. 201.6 (1979), Federal funding is conditioned upon the existence of an approved state plan which meets all Federal requirements, including the Medicaid requirement that States "assure that payments *** are not in excess of reasonable charges consistent with efficiency, economy, and quality of care" (42 U.S.C. Sec. 1396a(a)(30)). Moreover, defendant states, in determining nursing home payment rates, he was required to "reasonably take into account economic conditions and trends during the period for which the rates are set" (42 C.F.R. sec. 447.303 (1979)), and the payments must not have been either unnecessary or excessive (*Medical Society v. Toia* (2d Cir. 1977), 560 F.2d 535, 537; *National Union of Hospital & Health Care Employees, RWDSU, AFL-CIO v. Carey* (2d Cir. 1977), 557 F.2d 278, 279). Based on these provisions, defendant argues that since HHS had approved the inflation rate change that was found to be invalid in *Senn Park I* and such approval is necessary in order to be assured of continued Federal matching funds, any failure by the State to comply with the change which had been approved by HHS jeopardized the receipt of Federal funds. If HHS determines that a State is not in compliance with its approved State plan, HHS may withhold Federal funds in whole or in part. (42 U.S.C. Sec. 1396a(c).) We believe that defendant's argument that the risk of loss of Federal matching funds created an emergency situation is untenable for several reasons.

The rule changing the inflation update procedure declared invalid in *Senn Park I* was originally proposed by defendant on December 14, 1979. Approval of this change by HHS did not occur, however, until May 14, 1980. Yet, defendant made payments in accordance with the new procedure prior to receiving the requisite approval. Apparently, defendant was not concerned at that time that payments which were not in accordance with the approved State plan would result in the loss of Federal matching funds. In addition, it appears that while the procedure for updating the inflation rate set forth in the December 14, 1979, notice of rulemaking is the same as the procedure set forth in the July 16, 1980, notice of emergency rulemaking, that procedure is not identical in all respects to the method approved by HHS on May 4, 1980. Defendant, however, has not expressed concern that

---

[2]This section has been redesignated as 42 U.S.C. sec. 1396a(a)(13)(A), and it no longer requires that HHS approve and verify the State's cost-finding methods. See *Senn Park Nursing Center v. Miller* (1983), 118 Ill. App. 3d 504, 507, 509.

Federal matching funds will be cut off due to this disparity. Furthermore, as plaintiffs point out, the change in the inflation update procedure was not initiated by any action taken by HHS. Under these circumstances, we believe that defendant's finding of an emergency due to the risk of loss of Federal matching funds is based on mere speculation. It is unreasonable to assume that the Federal monies would be withheld if defendant failed to make payments pursuant to a rule which had been declared invalid by a State court.

In addition, it is important to recognize that the loss of Federal matching funds is not a step that could be taken lightly by HHS. Pursuant to 45 C.F.R. sec. 201.6(a) (1979), HHS can only withhold matching funds from a State if notice and an opportunity for a hearing have been given. Defendant does not claim to have received any notice. Moreover, the withholding of funds can only occur if, after the hearing, HHS finds that the State plan, or administration of the State plan, fails to comply with certain Federal statutory procedures. (45 C.F.R. sec. 201.6(a) (1979).) Since the method of updating the inflation update procedure which existed prior to defendant's attempts to change that procedure must have been approved by HHS at one time, and there is no indication that HHS has ever withdrawn that approval, it is not likely that HHS would find that the original method of calculating the inflation update factor was not in compliance with Federal procedures. Finally, even if HHS were to make a finding of noncompliance, it could withhold payments only until "the Administrator is satisfied that there will no longer be any such failure to comply" (45 C.F.R. sec. 201.6(e)), a condition which defendant would not have difficulty fulfilling.

We therefore conclude that defendant's statement in its notice of emergency rulemaking that an emergency existed due to the risk of loss of Federal matching funds is based on mere speculation and is wholly unsupportable, and that the finding of an emergency situation on that basis does not comport with the criteria necessary for establishing an emergency as that term is defined by the IAPA (Ill. Rev. Stat. 1979, ch. 127, par. 1005.02).

■ The second reason given by defendant for the necessity of issuing Emergency Rule 4.14221 was that the rule would "assure that inflation factors are not overstated due to short term fluctuations and prevent the system from providing a disincentive to cost containment." In support of his argument that an emergency rule was necessary to accomplish this purpose, defendant again relies on the Federal requirement that the payments made by the States to health care providers not be in excess of reasonable charges consistent with "effi-

ciency, economy, and quality of care" (42 U.S.C. sec. 1396a(a)(30)). According to defendant, the rule invalidated in *Senn Park I* reflected the agency's compliance with this mandate, and the emergency rule at issue here represents his continuing attempt to comply with the Federal mandate in view of the ruling in *Senn Park I*. However, we do not believe that defendant's efforts to comply with 42 U.S.C. sec. 1396a(a)(30) justified the finding of an emergency. Clearly, the provisions of that statute give the States wide latitude in determining the payments to be made under the Medicaid program. While defendant may reasonably believe that the change in the method of calculating the inflation update factor contained in Emergency Rule 4.14221 will ensure that inflation factors are not overstated and that providers will not have a disincentive to cost containment, we do not believe that these factors provide an adequate basis for the finding of an emergency. Nothing in the record suggests that HHS had expressed disapproval of the inflation update procedure in force prior to defendant's attempted rule change because it was not in line with Federal requirements for Medicaid payments. We conclude that while assuring that inflation factors are not overstated due to short term fluctuations and preventing the system from providing a disincentive to cost containment may represent important considerations, they do not involve a situation which constitutes a threat to the public interest, safety or welfare.

Defendant's final reason for finding that an emergency · existed was that following the decision in *Senn Park I* he received a demand from the Illinois Council on Long Term Care that its member nursing homes be reimbursed "in a manner other than that approved in the Title XIX State Plan, " *i.e.*, in a manner consistent with the ruling in *Senn Park I*. Defendant's position must be rejected in view of our decision in *Senn Park I* where we affirmed the trial court's ruling that defendant's attempt to amend the State plan was invalid. Therefore, any payments made to members of the Illinois Council on Long Term Care under the pre-1980 inflation rate procedure would be proper, and, as previously discussed, would not create a risk of loss of Federal matching funds.

■ We next address the issue of whether defendant failed to comply with the notice and comment requirements of the Federal regulations. At the time Emergency Rule 4.14221 was promulgated, an agency was required under 42 C.F.R. sec. 447.205 (1979) to give notice of changes in statewide methodology or level of reimbursement. Pursuant to this regulation, the notice had to be published at least 60 days before the proposed effective date of the change. (42 C.F.R. sec.

447.205(d)(1) (1979).) In addition, the contents of the notice were to include an address where written comments could be sent and reviewed by the public. (42 C.F.R. sec. 447.205(c)(5) (1979).) Defendant does not deny that he did not comply with these provisions.

Subsequent to the enactment of Emergency Rule 4.14221, however, 42 C.F.R. sec. 447.205 was revised so that it no longer applies to nursing home providers. Instead, a new provision, 42 C.F.R. sec. 447.254, governs the notice and comment procedures applicable to nursing home providers. This provision eliminates the 60-day prior-notice requirement, requiring only that the notice "[b]e published before the proposed effective date of the change." (42 C.F.R. sec. 447.254(d)(1) (1981).) The regulation retains, however, the requirement that an address be given where written comments may be sent and reviewed by the public. 42 C.F.R. sec. 447.254(c)(5) (1981).

Defendant argues that absent manifest injustice, the appellate court must apply the law in effect at the time it renders its decision (*Seniors United for Action v. Ray* (8th Cir. 1982), 675 F.2d 186, 189), and that no manifest injustice would result here if the new regulation were to be applied. Defendant further argues that the new regulation exempts changes required by court order from its requirement that public notice of any significant proposed change in methods and standards for setting payment rates be given. (42 C.F.R. sec. 447.254(b) (1981).) According to defendant, "The *Senn Park I* ruling clearly satisfies this exception to prior notice." Plaintiffs do not dispute defendant's contention that the new regulation is appliable here, but rather, they argue that defendant did not comply with the notice requirements of the new regulation and that the change in the inflation update method made by defendant did not come within the "court order" exception. We agree with plaintiffs.

Although the new regulation dispenses with the 60-day prior-notice requirement, it nevertheless still provides that a notice of emergency rulemaking must contain an address where the public may send comments. Clearly, defendant did not comply with this requirement. Moreover, defendant's argument that compliance with notice and comment procedures was not required because the emergency rule fell within the "court order" exception is manifestly erroneous. According to HHS, the reason for this exemption is that public comment would serve no useful purpose where a change is necessitated by court order because a court order is binding on a Medicaid agency. ([1979] 2 Medicare & Medicaid Guide (CCH) sec. 29,630.) Here, defendant's emergency rule did not implement a change ordered by the trial court in *Senn Park I* because the trial court in *Senn Park I* did not order

defendant to change the inflation update procedure. Rather, the trial court declared defendant's amended inflation update procedure invalid because it had not been adopted in conformity with the notice and comment requirements of the IAPA and the applicable Federal regulations. As plaintiffs point out, "Emergency Rule 4.14221 is not the implementation of a procedure imposed by court order upon which notice and comment would not serve a useful purpose, but an attempt to circumvent the court's finding that the proposed change was invalid precisely because the notice and comment procedure was not followed. The effect of the Circuit Court's order was not to change a method of Medicaid reimbursement but to prevent such a change without the notice and comment procedure. To allow [the emergency rule] to come within the 'court order' exception is once again to defeat the very purpose for which such procedures were promulgated." We therefore conclude that the emergency rule did not fall within the "court order" exception and that defendant failed to comply with the applicable Federal regulations when he adopted the emergency rule.

Although we agree with defendant that the existence of an emergency is primarily a matter for an agency's discretion (*Schenley Affiliated Brands Corp. v. Kirby* (1981), 21 Cal. App. 3d 177, 194-95, 98 Cal. Rptr. 609, 623), courts are not conclusively bound by an agency's determination that an emergency exists. (*Poschman v. Dumke* (1973), 31 Cal. App. 3d 932, 941, 107 Cal. Rptr. 596, 602.) The importance of judicial scrutiny of administrative actions cannot be overemphasized. The United States Supreme Court has stated that "[t]he rise of administrative bodies probably has been the most significant legal trend of the last century and perhaps more values today are affected by their decisions than by those of all the courts, review of administrative decisions apart." (*Federal Trade Com. v. Ruberoid Co.* (1952), 343 U.S. 470, 487, 96 L. Ed. 1081, 1094, 72 S. Ct. 800, 810 (Jackson, J., dissenting).) The far-reaching effects of the decisions of administrative bodies make it imperative that the agencies adhere to the notice and comment procedures mandated by statute in adopting their rules and regulations. These procedures are at the core of the IAPA. Accordingly, agencies' use of their emergency rulemaking authority, pursuant to which the notice and comment procedures are curtailed or bypassed, should be limited to those situations where it is clearly necessary so that the notice and comment procedures are not diluted. See Burns, *Judicial Enforcement of the Illinois Administrative Procedure Act's Rulemaking Provisions*, 55 Chi-Kent L. Rev. 383, 389 n.35.

■ The circumstances resulting in the promulgation of the emer-

gency rule at issue here are plainly inadequate to justify circumvention of the notice and comment procedures. The impetus for the adoption of the emergency rule was the trial court's order in *Senn Park I* that defendant's rule changing the method of calculating the inflation update factor was invalid, and the basis for the order was defendant's failure to comply with the notice and comment procedures of the IAPA. We have today affirmed that part of the *Senn Park I* order, and it would defeat the purposes of the notice and comment procedures if an agency could dispense with such procedures by enacting an emergency rule where the "emergency" was created by the agency's failure to follow these procedures in the first place. The "emergency" here was the result of an avoidable administrative failure to properly enact a rule in accordance with statutory requirements, and the reasons given by defendant in support of his finding of an emergency are all tainted by this fact. For all the above reasons, we conclude that Emergency Rule 4.14221 was not validly promulgated.

■ Finally, we address plaintiffs' argument that the trial court erred in ordering that plaintiffs' monetary claims must be brought in the Illinois Court of Claims. In support of the trial court's order, defendant argues that "[p]laintiffs are barred by the doctrine of Sovereign Immunity from attempting to collect any entitlement they may have to additional Medicaid reimbursement in either the Circuit Court or the Appellate Court."

In regard to the doctrine of sovereign immunity, "An Act in relation to immunity for the State of Illinois" (Ill. Rev. Stat. 1979, ch. 127, par. 801) provides: "Except as provided in 'An Act to create the Court of Claims, to prescribe its powers and duties, and to repeal An Act herein named', filed July 17, 1945, as amended, the State of Illinois shall not be made a defendant or party in any court." Section 8 of the Court of Claims Act states:

> "The court shall have exclusive jurisdiction to hear and determine the following matters:
>
> (a) All claims against the state founded upon any law of the State of Illinois, or upon any regulation thereunder by an executive or administrative officer or agency ***.
>
> (b) All claims against the state founded upon any contract entered into with the State of Illinois." (Ill. Rev. Stat. 1979, ch. 37, par. 439.8.)

Defendant argues that since plaintiffs each had a contract with IDPA, this case involves a contractual dispute and therefore the circuit court and the appellate court lack jurisdiction to determine the matter. We disagree.

■ The claims involved here are not founded upon contracts between plaintiffs and the State, but rather, are founded upon administrative rules and regulations. Thus, the critical issue here is whether this action was actually brought against the State. The determination of whether a suit is brought against the State and thus barred by the doctrine of sovereign immunity does not depend on the identity of the formal parties in the record, but on the issues involved and the relief sought. (*Moline Tool Co. v. Department of Revenue* (1951), 410 Ill. 35, 37, 101 N.E.2d 71, 72; *Betts v. Department of Revenue* (1979), 78 Ill. App. 3d 102, 107, 396 N.E.2d 1150, 1153.) Where suit is brought against a State official and the judgment, although nominally against the official, could operate to control the action of the State or subject it to liability, the cause is, in effect, a suit against the State (*Boards of Education v. Cronin* (1977), 54 Ill. App. 3d 584, 586, 370 N.E.2d 19, 21), although the mere fact that an action would cause money to be paid from the State treasury is not dispositive of the issue (*Board of Education v. Cronin* (1979), 69 Ill. App. 3d 472, 474, 388 N.E.2d 72, 74). In contrast, where an action seeks to prevent a State official from acting in accordance with an unconstitutional statute, failing to do what he is required by law to do, or taking action beyond his powers, it is a suit against the State official, not against the State itself. (*Board of Education v. Cronin* (1979), 69 Ill. App. 3d 472, 474, 388 N.E.2d 72, 74; *Moline Tool Co. v. Department of Revenue* (1951), 410 Ill. 35, 37, 101 N.E.2d 71, 72; *Sass v. Kramer* (1978), 72 Ill. 2d 485, 492, 381 N.E.2d 975, 977; *Valley View Community Unit School District No. 365U v. Cronin* (1978), 65 Ill. App. 3d 870, 872, 382 N.E.2d 1298, 1299; See *County of Cook v. Ogilvie* (1972), 50 Ill. 2d 379, 383, 280 N.E.2d 224, 226.) In this regard, an action to compel a public official to perform a clear and mandatory duty is not a suit against the State. (*John M. Bransfield Co. v. Kingery* (1936), 283 Ill. App. 405, 412-13; see *People v. Stevenson* (1916), 272 Ill. 215, 220-21, 111 N.E. 595, 597.) This is because " '[t]he presumption obtains that the State, or a department thereof, will not, and does not, violate the constitution and laws of the State, but that such violation, if it occurs, is by a State officer or the head of a department of the State, and such officer or head may be restrained by a proper action instituted by a citizen.' " *City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 124, 384 N.E.2d 310, 313, quoting *Schwing v. Miles* (1937), 367 Ill. 436, 441-42, 11 N.E.2d 944, 947.

Applying these principles to the case before us, we conclude that this action was properly brought in the circuit court and that the circuit court erred in deciding that plaintiffs could only seek monetary

relief in the Illinois Court of Claims. The central issue in this action is whether defendant properly promulgated Emergency Rule 4.14221. Since the basis of plaintiffs' action is that defendant was proceeding in violation of the law by his failure to comply with the statutory prerequisites for enacting an emergency rule, the action is properly against the defendant, not against the State itself. (See *Moline Tool Co. v. Department of Revenue* (1951), 410 Ill. 35, 37, 101 N.E.2d 71, 72-73; *City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 124-26, 384 N.E.2d 310, 312-14.) Additionally, the Illinois Court of Claims does not have exclusive jurisdiction to hear and determine claims against the State founded upon Federal regulations. (See Ill. Rev. Stat. 1979, ch. 37, par. 439.8.) Therefore, defendant's argument that this action had to be brought in the Illinois Court of Claims because it is a breach of contract action against the State must fail.

Accordingly, we affirm that part of the circuit court order providing that this case is not moot. We reverse that part of the order which provides that Emergency Rule 4.14221 is valid and that plaintiffs' monetary claims must be brought in the Illinois Court of Claims. The case is remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded.

McNAMARA, P.J., and WHITE, J., concur.