# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *McFatridge v. Madigan*, 2011 IL App (4th) 100936

---

| | |
|---|---|
| Appellate Court Caption | MICHAEL M. McFATRIDGE and THE COUNTY OF EDGAR, Plaintiffs-Appellants, v. LISA M. MADIGAN, Attorney General, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-10-0936 |
| Filed | December 14, 2011 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court erred in dismissing plaintiffs' complaint for *mandamus* seeking an order directing the Attorney General to approve payment for the reasonable litigation expenses incurred by plaintiff, a former State's Attorney, in defending actions for malicious prosecution, false imprisonment, and intentional infliction of emotional distress filed by two persons plaintiff successfully prosecuted for murder and arson who were later released from custody, since the complaint alleged sufficient facts to show a clear right of recovery on plaintiff's part and a clear duty on the part of the Attorney General under section 2(b) of the State Employee Indemnification Act. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 10-MR-530; the Hon. Patrick J. Londrigan, Judge, presiding. |
| Judgment | Reversed. |

| Counsel on Appeal | Michael E. Raub (argued), of Heyl, Royster, Voelker & Allen, of Urbana, and Terry L. Ekl (argued), of Ekl Williams, PLLC, of Lisle, for appellants. |
| --- | --- |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro (argued), Solicitor General, and Brian F. Barov, Assistant Attorney General, of counsel), for appellee. |
| Panel | JUSTICE POPE delivered the judgment of the court, with opinion. Justices Steigmann and Knecht concurred in the judgment and opinion. |

## OPINION

¶ 1 In August 2010, plaintiffs, Michael M. McFatridge and Edgar County, Illinois (McFatridge), filed a complaint for *mandamus* relief seeking an order directing defendant, Lisa M. Madigan, the Illinois Attorney General (Attorney General), to approve payment for reasonable litigation expenses incurred in the defense of two civil actions filed against plaintiffs by Gordon "Randy" Steidl and Herbert Whitlock.

¶ 2 In October 2010, the trial court dismissed plaintiffs' complaint, finding it did not state facts "necessary to establish a clear and undoubted right to relief sought and a corresponding duty on the part of the [Attorney General] to perform the act demanded." The trial court did not provide any rationale for its ruling.

¶ 3 Plaintiffs appeal, arguing the trial court erred in dismissing the *mandamus* complaint where the complaint pleaded sufficient facts to show a clear right of recovery on the part of McFatridge and a clear duty on behalf of the Attorney General because section 2(b) of the State Employee Indemnification Act (Act) (5 ILCS 350/2(b) (West 2008)) requires the Attorney General to provide for McFatridge's defense costs. We reverse.

¶ 4 I. BACKGROUND

¶ 5 Between 1980 and 1991, McFatridge served as the State's Attorney of Edgar County, Illinois. In 1987, McFatridge successfully prosecuted Steidl and Whitlock for murder. Steidl was convicted of the murders of both Dyke Rhoads and Karen Rhoads and received a sentence of death, which was later reduced to natural life in prison. Whitlock was convicted of murdering Karen Rhoads and sentenced to life in prison.

¶ 6 In June 2003, the United State District Court for the Central District of Illinois granted Steidl's *habeas corpus* petition, vacated Steidl's conviction, and gave the State 120 days to either release or retry Steidl. *Steidl v. Walls*, 267 F. Supp. 2d 919, 940-41 (2003). In 2007,

this court granted Whitlock's posttrial motion and ordered his release or retrial. *People v. Whitlock*, No. 4-05-0958 (Sept. 6, 2007) (unpublished order under Supreme Court Rule 23). Both Steidl and Whitlock have since been released from custody and have not been retried.

¶ 7 In May 2005, Steidl filed a complaint in the United States District Court for the Central District of Illinois pursuant to, *inter alia*, section 1983 of the Civil Rights Act (42 U.S.C. § 1983 (2000)) against a number of officials involved in his prosecution, including McFatridge and Edgar County. Steidl's complaint alleged several claims, including malicious prosecution, false imprisonment, and intentional infliction of emotional distress. Specifically, Steidl alleged he was tried and convicted of murder and arson and sentenced to death based on false evidence which was fabricated, coerced, and manipulated by McFatridge.

¶ 8 In June 2005, McFatridge requested the Illinois Attorney General represent him in the Steidl litigation pursuant to section 2 of the Act (5 ILCS 350/2 (West 2008)).

¶ 9 In a July 6, 2005, letter, the Attorney General declined McFatridge's request on the ground "the acts or omissions which give rise to plaintiff's claim involve allegations of intentional, wilful or wanton misconduct on your part." The letter also stated, "If the court or jury find that the acts complained of were not intentional, wilful or wanton misconduct you will be indemnified for any judgment and reasonable attorneys' fees will be reimbursed as provided by law."

¶ 10 In April 2009, Whitlock filed an amended complaint in federal court against McFatridge and Edgar County, alleging claims similar to those contained in Steidl's complaint. Both Whitlock's and Steidl's lawsuits sought to hold Edgar County financially responsible for any judgment entered against McFatridge because McFatridge was its employee. According to the parties, both actions are currently pending in federal district court.

¶ 11 In March and April 2009, then Edgar County State's Attorney Matthew Sullivan requested the Attorney General represent McFatridge in the Steidl and Whitlock litigation. Sullivan also asked the State to pay at least two-thirds of Edgar County's legal expenses.

¶ 12 On May 6, 2009, the Attorney General denied both of Sullivan's requests. The Attorney General declined to represent McFatridge because his acts or omissions "involved allegations of intentional, wilful or wanton misconduct." The Attorney General stated McFatridge would be reimbursed for reasonable attorney fees "if a court or jury [finds] the acts complained of were not intentional, wilful or wanton." The Attorney General also denied Sullivan's request to pay Edgar County's legal fees because the Attorney General "does not represent counties and other units of local government."

¶ 13 In a July 20, 2010, letter to the Attorney General, Terry Ekl, McFatridge's retained counsel, wrote the following:

> "Steidl filed suit in 2005 and Whitlock filed suit in 2008 shortly after his release from custody. Two insurance carriers, Scottsdale Insurance and White Mountain Insurance, have been defending this matter under a reservation of rights for several years and had agreed to pay our attorney's fees. Scottsdale was recently successful in winning a declaratory judgment suit in connection with their duty to defend as well as indemnification for any judgment obtained against Mr. McFatridge. Scottsdale informed us that as of May 12, 2010[,] they will no longer be funding the defense of McFatridge.

White Mountain recently informed McFatridge in writing that they will no longer pay the costs of his defense as of June 30, 2010.

Pursuant to 5 ILCS 350/2, as the elected State's Attorney of Edgar County, performing acts within his official capacity, he is entitled to have the expenses of his defense including attorney fees paid by the State of Illinois. My law firm has been involved in this matter for over four (4) years and Mr. McFatridge would exercise his right under 5 ILCS 350/2 to have my firm continue to defend this case to conclusion."

¶ 14    In an August 19, 2010, letter, the Attorney General referenced its prior denials of McFatridge's previous requests for representation and wrote the following:

"By letters dated June 14 and June 29, 2005, Mr. McFatridge requested representation in the Steidl Lawsuit. That request was denied July 6, 2005. Former State's Attorney Matthew Sullivan, by letters dated March 12 and April 21, 2009, requested that the State of Illinois provide a defense to Mr. McFatridge in both the Steidl and Whitlock Lawsuits, and also asked that the State pay two-thirds of the Edgar County legal expenses in both Lawsuits. These requests were denied May 6, 2009. The July 6, 2005[,] and May 6, 2009[,] denials were because the acts or omissions which gave rise to Steidl and Whitlock's claims against Mr. McFatridge involved allegations of intentional, wilful or wanton misconduct. With these prior denials, Mr. McFatridge and Mr. Sullivan were also told that if a court or jury were to find that the acts Steidl and Whitlock complained of did not represent intentional, wilful or wanton misconduct, Mr. McFatridge would be indemnified for any judgment, and reasonable attorneys' fees would be reimbursed as provided by law.

The basis for each of your current August 6 and July 20, 2010[,] requests are [*sic*] essentially the same. Scottsdale Insurance and White Mountain Reinsurance had provided Mr. McFatridge and the County with a defense under certain insurance policies. Scottsdale's successful declaratory judgment action was recently affirmed by the Seventh Circuit. Scottsdale therefore will no longer provide a defense to Mr. McFatridge. White Mountain has also said it will no longer provide a defense. I have reviewed the White Mountain and Scottsdale letters denying any further defense to Mr. McFatridge. Further, I have reviewed the District Court declaratory judgment orders denying coverage, as well as the Seventh Circuit opinion affirming the denial of coverage. None of these materials found that the acts of which Steidl and Whitlock complain do not represent intentional, wilful or wanton misconduct.

Further, in neither of the Steidl or Whitlock lawsuits has a court or jury found that Mr. McFatridge did not engage in intentional, wilful or wanton misconduct. In fact, in a September 6, 2007[,] court order awarding Whitlock post conviction relief, a unanimous Illinois Appellate Court concluded as follows: 'we further hold that the State violated *Brady* by suppressing [evidence] ***.'

For these reasons, your latest requests for representation for Mr. McFatridge are denied."

¶ 15    On August 30, 2010, McFatridge filed a complaint for *mandamus* against the Attorney General requesting an order directing the Attorney General to "approve all reasonable

litigation expenses and attorneys' fees which [McFatridge] expects to incur in the defense of the Steidl and Whitlock civil suits."

¶ 16 On October 1, 2010, pursuant to section 2-619.1 of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-619.1 (West 2008)), the Attorney General filed a combined motion to dismiss McFatridge's complaint under both sections 2-615 and 2-619 (735 ILCS 5/2-615, 2-619 (West 2008)). The section 2-615 motion argued the Attorney General is afforded discretion under the Act and *mandamus* is not a proper remedy to control the exercise of discretion by a state official. The section 2-619 motion argued the complaint should be dismissed because (1) the complaint attempts to control the actions of state officials in a matter where the Attorney General is granted discretion, (2) the complaint is barred by the statute of limitations and *laches* where the claim was brought more than five years after the Attorney General denied McFatridge's request for representation, and (3) McFatridge's claims are barred by sovereign immunity.

¶ 17 On October 21, 2010, the trial court dismissed McFatridge's complaint pursuant to section 2-619 because it did not state facts "necessary to establish a clear and undoubted right to relief sought and a corresponding duty on the part of the [Attorney General] to perform the act demanded." However, the trial court failed to provide any rationale for its decision. (Although the docket sheet reflects the court allowed the section 2-619 motion to dismiss, it appears the section 2-615 motion to dismiss was allowed.)

¶ 18 This appeal followed.

¶ 19 I. ANALYSIS

¶ 20 On appeal, McFatridge argues the trial court erred in dismissing his *mandamus* complaint where the complaint pleaded sufficient facts to show a clear right of recovery on the part of McFatridge and a clear duty on behalf of the Attorney General. Specifically, McFatridge contends section 2(b) of the Act requires the Attorney General to provide for McFatridge's defense costs. McFatridge maintains under section 2(b) of the Act, the Attorney General has no discretion to refuse to pay his reasonable attorney fees.

¶ 21 The Attorney General argues section 2(b) affords the Attorney General the discretion to deny McFatridge's attorney fees and *mandamus* cannot be used to control a matter within its discretion. In the alternative, the Attorney General contends (1) McFatridge's *mandamus* complaint was barred by (a) the statute of limitations and (b) sovereign immunity and (2) McFatridge is not an elected state official because he is no longer serving as State's Attorney.

¶ 22 A. Standard of Review

¶ 23 "*Mandamus* is an extraordinary remedy that may be used to compel a public officer to perform his official duties that do not involve an exercise of discretion." *Ford v. Walker*, 377 Ill. App. 3d 1120, 1124, 888 N.E.2d 123, 127 (2007). *Mandamus* is not proper to direct the manner in which a discretionary act is performed even if the judgment or discretion has been erroneously exercised. *Turner-El v. West*, 349 Ill. App. 3d 475, 480, 811 N.E.2d 728, 733 (2004). A court will not grant a writ of *mandamus* unless the moving party demonstrates a

clear, affirmative right to relief, a clear duty on the part of the opposing party to act, and clear authority in the opposing party to comply with the writ. *Walker*, 377 Ill. App. 3d at 1124, 888 N.E.2d at 127.

¶ 24      The Attorney General filed a combined motion to dismiss McFatridge's *mandamus* complaint. See 735 ILCS 5/2-619.1 (West 2008). A section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 2008)) attacks the sufficiency of the complaint and raises the question of whether the allegations of the complaint, when viewed in the light most favorable to the nonmoving party, are sufficient to state a cause of action upon which relief can be granted. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429, 856 N.E.2d 1048, 1053 (2006). Because a motion to dismiss under section 2-615 challenges the legal sufficiency of the complaint by alleging defects on its face, we review an order ruling on the motion *de novo*. *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 364, 821 N.E.2d 1099, 1110 (2004). In ruling on a section 2-619 motion to dismiss, " 'the trial court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party,' and it should grant the motion 'if the plaintiff can prove no set of facts that would support a cause of action.' " *Hadley v. Montes*, 379 Ill. App. 3d 405, 407, 883 N.E.2d 703, 706 (2008) (quoting *Rodriguez v. Sheriff's Merit Comm'n of Kane County*, 218 Ill. 2d 342, 349, 843 N.E.2d 379, 382 (2006)). We review *de novo* the dismissal of a complaint pursuant to section 2-619. *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 115, 896 N.E.2d 232, 235 (2008).

¶ 25                          B. Indemnification Act

¶ 26      The central issue in this important case requires this court to construe section 2 of the Act. We review issues of statutory construction *de novo*. *People v. Ehley*, 381 Ill. App. 3d 937, 943, 887 N.E.2d 772, 778 (2008). When interpreting a statute, we must "ascertain and give effect to the intent of the legislature." *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440, 892 N.E.2d 994, 1007 (2008). The best evidence of that intent is the plain language of the statute, and when the language of the statute is clear and unambiguous, this court is bound by that plain language. *Albee v. City of Bloomington*, 365 Ill. App. 3d 526, 528, 849 N.E.2d 1094, 1096 (2006). "Where the language of the statute is clear and unambiguous, we must apply it as written, without resort to other tools of statutory construction." *MD Electrical Contractors, Inc. v. Abrams*, 228 Ill. 2d 281, 287-88, 888 N.E.2d 54, 58 (2008). However, if the language of a statute is ambiguous, a reviewing court may look to tools of interpretation to ascertain the intended meaning of a provision. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59, 857 N.E.2d 229, 236 (2006). A statute is ambiguous where two well-informed people could reach different conclusions regarding its language. *MD Electrical Contractors*, 228 Ill. 2d at 288, 888 N.E.2d at 58.

¶ 27      McFatridge argues under the second paragraph of section 2(b) of the Act, the Attorney General does not possess discretion to refuse payment of attorney fees for elected state officials. The Attorney General argues pursuant to the first paragraph of section 2(b) it possessed the discretion to decline McFatridge's request for attorney fees because it determined the alleged acts underlying the civil claim were intentional, wilful, or wanton misconduct. However, a statute should be read as a whole and construed so as to give effect

to every word, clause, and sentence and should not be read in a way that would render any part superfluous or meaningless. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189, 561 N.E.2d 656, 661 (1990). Accordingly we cannot read either paragraph of section 2(b) without considering it in the context of the Act as a whole.

¶ 28    Section 2(a) of the Act provides for the representation and indemnification of state employees in civil actions as follows:

"In the event that any civil proceeding is commenced against any State employee arising out of any act or omission occurring within the scope of the employee's State employment, the Attorney General shall, upon timely and appropriate notice to him by such employee, appear on behalf of such employee and defend the action." 5 ILCS 350/2(a) (West 2008).

¶ 29    The Act also provides limitations on the Attorney General's representation of state employees. Pursuant to section 2(b), the Attorney General "shall decline" to represent a state employee where

"the Attorney General determines that so appearing and defending an employee either (1) involves an actual or potential conflict of interest, or (2) that the act or omission which gave rise to the claim was not within the scope of the employees's State employment or was intentional, wilful or wanton misconduct." 5 ILCS 350/2(b) (West 2008).

¶ 30    In the event the Attorney General declines representation because of an actual or potential conflict of interest, the employee "may employ his own attorney to appear and defend, in which event the State shall pay the employee's court costs, litigation expenses and attorneys' fees to the extent approved by the Attorney General as reasonable, as they are incurred." 5 ILCS 350/2(b) (West 2008).

¶ 31    If the Attorney General declines representation on the ground the employee's act or omission leading to the claim was not within the scope of employment or was intentional, wilful, or wanton misconduct, then only in the event the trier of fact finds the employee's "acts or omissions" were within the scope of his employment and were not the result of intentional, wilful, or wanton misconduct will the State indemnify the employee for any damages awarded, court costs, and attorney fees assessed as any part of any final judgment. In addition, the State would also have to reimburse the employee's litigation costs and attorney fees, as approved by the Attorney General as reasonable. 5 ILCS 350/2(b) (West 2008).

¶ 32    Section 1, the "Definitions" section of the Act, defines the term "employee" as including, *inter alia*, former or present elected state officers. 350 ILCS 350/1(b) (West 2008).

¶ 33    In this case, the Attorney General declined to represent McFatridge on the ground the underlying claim arose from intentional, wilful, or wanton misconduct–presumably a reference to the limitations found in paragraph one of section 2(b) of the Act. However, the limitations in paragraph one of section 2(b) notwithstanding, paragraph two of section 2(b) specifically addresses elected state officials as follows:

"In the event that the defendant[, *i.e.*, 'employee,'] in the proceeding is an elected State official, including members of the General Assembly, the elected State official may retain his or her attorney, provided that said attorney shall be reasonably acceptable to

-7-

the Attorney General. In such case, the State *shall pay* the elected State official's court costs, litigation expenses, and attorneys' fees, to the extent approved by the Attorney General as reasonable, *as they are incurred*." (Emphases added.) 5 ILCS 350/2(b) (West 2008).

By excluding the more general category of nonelected employees from this paragraph, the General Assembly demonstrated it intended to create a much narrower category of employee to treat differently. See *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459, 781 N.E.2d 261, 267 (2002) (where both a general and specific statutory provision relating to the same subject exist in the same act, we will presume the legislature intended the more specific provision to govern). Indeed, counsel agreed at oral argument the term "elected State official" includes only the 6 statewide constitutional officers, the 102 elected State's Attorneys, and the 176 members of the General Assembly. This is a very limited class of actors, all of whom are elected on a partisan basis (which by itself lends rational support for the requirement the State pay for the elected official's reasonable choice of attorney without regard to any exercise of discretion on the part of the Attorney General who, as a constitutional officer, is a member of that class). It is reasonable to conclude the legislature sought to insulate partisan elected officials from potential withholding of representation or from arbitrary denial of payment for attorney fees when the opposite party is in control of those decisions. It is also reasonable to conclude the legislature would provide special protection to elected State's Attorneys whose decisions to prosecute individuals must be able to be made without the threat of financial bankruptcy should they be sued.

¶ 34    The second paragraph of section 2(b) does not contain the limiting language found in the first paragraph of section 2(b). Instead, this paragraph provides elected officials with the right to employ the counsel of their choosing and limits the Attorney General's discretion in this regard to whether the elected official's choice of counsel and the attorney fees are reasonable. In the absence of either of these enumerated determinations, the Act mandates "the State shall pay the elected State official's court costs, litigation expenses, and attorneys' fees *** as they are incurred." 5 ILCS 350/2(b) (West 2008).

¶ 35    We note the Attorney General's argument would be stronger if the second paragraph of section 2(b) appeared in section 2(a), rather than in section 2(b). If that were the case, the Act would provide all state employees receive the Attorney General's representation, but in the event you are an elected state official, you may retain counsel of your choosing. Then both those elected and nonelected would be subject to the limitations on the Attorney General's representation found in paragraph one of section 2(b), *i.e.*, conflicts of interest and intentional, wilful, or wanton misconduct findings.

¶ 36    In this case, however, the only requirement found in section 2(b) relating to elected officials is that their choice of attorney and the fees charged by that attorney are reasonable–nothing more. If the General Assembly wanted to impose additional restrictions and limitations on the State's obligation to pay for an elected official's court costs, litigation expenses, and attorney fees, it would have so stated. It did not. Instead, the plain language of the second paragraph of section 2(b) provides McFatridge with a clear, affirmative right to reimbursement of his legal costs as they are incurred, regardless of any determination by the Attorney General of intentional, wilful, and wanton misconduct. Accordingly, the State

is obligated to pay McFatridge's court costs, litigation expenses, and attorney fees to the extent the Attorney General determines those charges are reasonable.

¶ 37                                    C. Statute of Limitations

¶ 38      In the alternative, the Attorney General argues McFatridge's *mandamus* complaint was time-barred by the five-year limitation period found in the "catch-all" provision of section 13-205 of the Procedure Code. 735 ILCS 5/13-205 (West 2008) ("all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued"). Specifically, the Attorney General contends McFatridge's claim accrued on July 6, 2005, when the Attorney General denied his initial request for representation and therefore his August 30, 2010, *mandamus* complaint was not timely filed.

¶ 39      McFatridge argues the five-year statute of limitations is not at issue in this case where the Attorney General did not deny his request to have the State pay for his litigation expenses and attorney fees until August 19, 2010, and he filed his complaint on August 30, 2010. We agree with McFatridge.

¶ 40      In a July 20, 2010, letter to the Attorney General, McFatridge's retained counsel, wrote in relevant part, the following:

>      "Pursuant to 5 ILCS 350/2, as the elected State's Attorney of Edgar County, performing acts within his official capacity, he is entitled to have the expenses of his defense including attorney fees paid by the State of Illinois. My law firm has been involved in this matter for over four (4) years and Mr. McFatridge would exercise his right under 5 ILCS 350/2 to have my firm continue to defend this case to conclusion."

¶ 41      In an August 19, 2010, letter, the Attorney General referenced its prior denials of McFatridge's previous requests for representation and wrote the following:

>      "By letters dated June 14 and June 29, 2005[,] McFatridge requested representation in the Steidl lawsuit. That request was denied July 6, 2005. Former State's Attorney Matthew Sullivan, by letters dated Match 12 and April 21, 2009, requested that the State of Illinois provide a defense to [McFatridge] in both the Steidl and Whitlock lawsuits, and also asked that the State pay two-thirds of the Edgar County legal expenses in both Lawsuits. These requests were denied May 6, 2009. The July 6, 2005[,] and May 6, 2009[,] denials were because the acts or omissions which gave rise to Steidl and Whitlock's claims against [McFatridge] involved allegations of intentional, wilful or wanton misconduct. With these prior denials, [McFatridge] and Mr. Sullivan were also told that if a court or jury were to find that the acts Steidl and Whitlock complained of did not represent intentional, wilful or wanton misconduct [McFatridge] would be indemnified for any judgment, and reasonable attorney's fees would be reimbursed as provided by law.

>      The basis for your current August 6 and July 20, 2010[,] requests are [*sic*] essentially the same. Scottsdale Insurance and White Mountain Reinsurance had provided Mr. McFatridge and the County with a defense under certain insurance policies. Scottsdale's successful declaratory judgment action was recently affirmed by the Seventh Circuit. Scottsdale therefore will no longer provide a defense to Mr. McFatridge. White Mountain

has also said it will no longer provide a defense. I have reviewed the White Mountain and Scottsdale letters denying any further defense to Mr. McFatridge. Further, I have reviewed the District Court declaratory judgment orders denying coverage, as well as the Seventh Circuit opinion affirming the denial of coverage. None of these materials found that the acts of which Steidl and Whitlock complain do not represent intentional, wilful or wanton misconduct.

Further, in neither of the Steidl or Whitlock lawsuits has a court or jury found that Mr. McFatridge did not engage in intentional, wilful or wanton misconduct. In fact, in a September 6, 2007, order awarding Whitlock post conviction relief, a unanimous Illinois Appellate Court concluded as follows: 'we further hold that the State violated *Brady* by suppressing [evidence] ***.'

For these reasons, your latest request for representation for Mr. McFatridge are denied."

¶ 42    In this case, the record shows the Attorney General's denial of McFatridge's July 20, 2010, request for *payment* of attorney fees and litigation expenses took place on August 19, 2010, not in 2005. We note that contrary to the wording of the Attorney General's letter, McFatridge's July 20, 2010, request was for *payment* of attorney fees and *not* a request for the Attorney General's representation. When the Attorney General responded to McFatridge's initial 2005 request for representation, it only declined to represent him and did not address McFatridge's choice of counsel or payment of his legal fees if reasonable. Instead, the Attorney General advised McFatridge would be indemnified for any judgment and reimbursed reasonable attorney fees *only if* the trier of fact found the acts complained of were not intentional, wilful, or wanton misconduct (presumably a reference to the limitations found in paragraph one of section 2(b) of the Act).

¶ 43    According to the record before us, McFatridge had not specifically requested the State pay for his litigation expenses and attorney fees because he was an elected official. Likewise, it was not until August 2010 that the Attorney General denied McFatridge's paragraph two, section 2(b) request. Accordingly, the statute of limitations would have begun to run in August 2010, *i.e.*, when his specific request for payment of litigation expenses and attorney fees was denied. McFatridge filed his *mandamus* complaint on August 30, 2010, well within the five-year statutory period provided for by section 13-205 of the Procedure Code. We note even if we were to use the Attorney General's May 2009 denial of Sullivan's request that the State pay at least two-thirds of Edgar County's legal expenses as the date the action accrued, McFatridge's *mandamus* complaint would still have been filed within the five-year statutory period. Accordingly, the Attorney General's argument McFatridge's complaint is barred by the statute of limitations fails.

¶ 44                                    D. Sovereign Immunity

¶ 45    The Attorney General also argues McFatridge's *mandamus* complaint is barred by sovereign immunity to the extent it seeks to control the Attorney General's exercise of discretion. McFatridge replies, arguing sovereign immunity is not at issue in this case because the Attorney General was without discretion to deny his request for reimbursement.

¶ 46    "The purpose of sovereign immunity is to protect the state from interference with the performance of governmental functions and to preserve and to protect state funds." *People ex rel. Manning v. Nickerson*, 184 Ill. 2d 245, 248, 702 N.E.2d 1278, 1280 (1998). An action seeking money damages against the State must be brought in the court of claims. See *Stone v. Chrans*, 142 Ill. App. 3d 235, 237, 491 N.E.2d 830, 832 (1986) (affirming the trial court's order striking a portion of a *mandamus* petition seeking money damages and finding the court of claims had exclusive jurisdiction over that claim).

¶ 47    However, "the determination of whether a suit is brought against the State and thus barred by the doctrine of sovereign immunity does not depend on the identity of the formal parties, but rather on the issued raised and the relief sought." *Senn Park Nursing Center v. Miller*, 104 Ill. 2d 169, 186, 470 N.E.2d 1029, 1038 (1984) (citing *Senn Park Nursing Center v. Miller*, 118 Ill. App. 3d 733, 746, 455 N.E.2d 162, 171 (1983)). A suit to compel state officials to act in accordance with the law is not regarded as an action against the state and is not barred by sovereign immunity even though the payment of state funds may be involved. *In re Lawrence M.*, 172 Ill. 2d 523, 527, 670 N.E.2d 710, 713 (1996). Compelling a state official to act in accordance with the law, even if so acting involves the payment of state funds, differs from an action seeking actual money damages from the State and the state official in his official capacity. See, *e.g.*, *City of Chicago v. Board of Trustees of the University of Illinois*, 293 Ill. App. 3d 897, 901-02, 689 N.E.2d 125, 128 (1997). " '[A]n action to compel a public official to perform a clear and mandatory duty is not a suit against the State.' " *Senn Park*, 104 Ill. 2d at 189, 470 N.E.2d at 1039 (quoting *Senn Park*, 118 Ill. App. 3d at 746, 455 N.E.2d at 171-72).

¶ 48    In this case, McFatridge's *mandamus* complaint was directed against the Attorney General in her official capacity and was not a suit against the State. We note this is not a case where McFatridge has filed a *mandamus* complaint because the Attorney General has refused to reimburse all of McFatridge's claimed litigation expenses on the ground they are unreasonable. Instead, McFatridge is asking the Attorney General to perform a clear and nondiscretionary task. For the reasons previously stated, the plain language of section 2(b), as it pertains to elected officials, only affords the Attorney General discretion to refuse payment of attorney fees if it finds either (1) the elected official's choice of counsel unsatisfactory, or (2) the fees are determined to be unreasonable. Neither instance is at issue here. Instead, in this case, the Attorney General has refused to pay *any* of the costs without regard to a reasonableness determination or an expression of dissatisfaction with McFatridge's choice of counsel. Because the Attorney General has no discretion outside of these matters to deny reimbursement, sovereign immunity cannot be raised as a defense.


¶ 49                            E. Former Elected Officials

¶ 50    Finally, the Attorney General argues McFatridge is not an elected state official for purposes of the Act because he is no longer serving as State's Attorney. We are unpersuaded.

¶ 51    As previously stated, counsel agreed the number of elected state officials covered in the second paragraph of section 2(b) is comprised of the members of the General Assembly, the constitutional officers, and the elected State's Attorneys. While we question how frequently

-11-

a member of the General Assembly would be subject to a section 1983 claim, we can easily conceive of many scenarios where federal civil rights claims are brought against former State's Attorneys for actions taken during their tenure. Further, those claims brought pursuant to section 1983 would necessarily involve claims of intentional, wilful, and wanton misconduct.

¶ 52 According to the Attorney General's position, if an elected State's Attorney retired or lost an election during the pendency of the litigation, or simply had a claim brought against him or her a day after leaving office, he or she would lose the right to have the State pay for the counsel of his or her choosing. Such situations would provide inconsistent and absurd results. A reviewing court is "not bound by the literal language of a statute if that language produces absurd or unjust results not contemplated by the legislature." *In re Donald A.G.*, 221 Ill. 2d 234, 246, 850 N.E.2d 172, 179 (2006). When the legislature used the word "is" in the sentence "In the event the defendant in the proceeding is an elected State official," it was merely differentiating that class of employee–elected state officials–from the thousands of other state employees without the special protection of being able to hire their own counsel at State expense. It was not limiting the protection of the statute only to present elected state officials. Here, McFatridge is clearly being sued for actions he took in prosecuting Steidl and Whitlock while the elected State's Attorney of Edgar County. It is clear the General Assembly meant to protect elected State's Attorneys in the second paragraph of section 2(b). Accordingly, the Attorney General's argument fails.

¶ 53                                        III. CONCLUSION

¶ 54 For the reasons stated, we reverse the trial court's order granting the Attorney General's motion to dismiss McFatridge's *mandamus* complaint.

¶ 55 Reversed.